IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL WEAVER,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF UTAH et al.,<br><br>    Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 1:06-CV-82 TS<br><br>District Judge Ted Stewart |

### I. Background

Plaintiff, Michael Weaver, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2011). Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id.* 1915. Plaintiff's original Complaint (Dkt. no. 3) was filed on July 19, 2006, but was dismissed for failure to state a claim on January 4, 2008 (Dkt. no. 24). On September 12, 2008, Plaintiff filed an Amended Complaint alleging denial of due process under the Fifth and Fourteenth Amendments based on wrongful interference with his parental rights. Plaintiff's claims stemmed from the removal of his children to state custody on April 1, 2005, by the Utah Division of Child and Family Services (DCFS) and the subsequent termination of his parental rights. The Amended Complaint asserted claims against various DCFS agents, certain foster care providers, and the attorneys who separately represented Plaintiff and his children in custody proceedings. On September 15, 2008, the Court entered a Memorandum Decision and Order (Dkt. no. 40) dismissing all defendants except

DCFS agents Nicole Lowe, fka Nicole Oyler, and Jaclyn Lee, who were ordered to be served process by the United States Marshals Service. Despite substantial efforts, however, the Marshals Service ultimately proved unable to locate and serve process upon Jaclyn Lee, leaving Nicole Lowe the sole remaining Defendant in this case.

The Court broadly construed Plaintiff's Amended Complaint to state a claim against Defendant Lowe in her personal capacity based on the initial removal of Plaintiff children without due process. Plaintiff alleged that Lowe "responded to my arrest and removed my children without proper authority and cause" (Am. Compl. at 3), and later lied on a report of the incident (Am. Compl. at 13). In addition to various forms of injunctive relief, Plaintiff's Amended Complaint also sought money damages against Lowe personally.

On March 16, 2010, Defendant Lowe moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine. (Dkt. nos. 58-59.) Plaintiff filed a response brief (Dkt. no. 62) conceding that most of his claims are jurisdictionally barred but asserting that his due process claim regarding Lowe's involvement in the removal of his children to state custody on April 1, 2005, without a pre-deprivation hearing, was not barred by *Rooker-Feldman*. Plaintiff asserted that the claim was never directly addressed in the state courts and is supported by a Utah Office of Child Protection Ombudsman (OCPO) investigation which was not completed until after his parental rights were terminated. The Court directed the parties to file supplemental briefs and additional evidence regarding Plaintiff's due process claim, including relevant state court documents and transcripts. Defendant's brief asserted that in addition to the *Rooker-Feldman* jurisdictional issue Plaintiff's claim should also be dismissed

based on collateral estoppel. Having reviewed the supplemental briefs and exhibits, the parties memoranda and relevant law the Court now dismisses Plaintiff's suit for the reasons discussed below.

## II. Plaintiff's Claims[1]

Plaintiff's claims against Defendant Lowe stem from her actions as a DCFS Caseworker and her direct involvement in the removal of Plaintiff's children from his custody on April 1, 2005. On that day, Plaintiff was driving a borrowed car with his son in the back seat when he was stopped by police.[2] Plaintiff's daughter was being tended by a babysitter, Mrs. Vandersteen, who was also Plaintiff's apartment manager and had known Plaintiff and his children for about one year. As a result of his run-in with police, Plaintiff was arrested on outstanding warrants and the car he was driving was searched. During the search officers found methamphetamine in the car within reach of Plaintiff's son. At some point Mrs. Vandersteen arrived at the scene with Plaintiff's daughter and stated her willingness to care for both children while Plaintiff was away. In the meantime, however, Lowe somehow became aware of the situation and responded to the scene.[3] After contacting her supervisor and conducting some on-scene research Lowe took both

---

[1] The facts presented here are drawn from Plaintiff's Amended Complaint and supporting documentation, including the OCPO report. On a motion to dismiss the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

[2] Plaintiff asserts that he was not stopped, but rather voluntarily approached the police, this distinction, however, is irrelevant because the validity of the stop and arrest are not at issue here.

[3] Plaintiff alleges that one of the police officers present had a personal relationship with Lowe and contacted her. The OCPO investigation was unable to ascertain how Lowe was

3

of Plaintiff's children into protective custody. Although Plaintiff was released from jail later that evening his children were placed in a temporary shelter pending a hearing on the removal. A "shelter hearing" was held on April 5, 2005, to review the temporary removal and to determine whether continued removal was necessary. The juvenile court concluded that the initial removal was reasonable based on Plaintiff's arrest and that continued removal was necessary pending proceedings to determine the status of Plaintiff's parental rights. On August 22, 2006, following a two-day trial, Plaintiff's parental rights were terminated.

### III. *Rooker-Feldman* Doctrine

Defendant's first ground for dismissal is that Plaintiff's claim is jurisdictionally barred by the *Rooker-Feldman* doctrine.[4] Pursuant to 28 U.S.C. § 1257(a), "federal review of state court judgments can be obtained only in the United States Supreme Court." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998). The *Rooker–Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 1521–22 (2005). Thus, the *Rooker–Feldman* doctrine prevents "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state

---

notified. (OCPO Report, Dkt. no. 62, Ex. 1 at 12.)

[4] The *Rooker-Feldman* doctrine draws its name from two cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983).

4

judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647, 129 (1994). The *Rooker–Feldman* doctrine "prohibits a lower federal court [both] from considering claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (internal citation and quotations omitted). A claim is inextricably intertwined if "the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Id.* at 476.

The Supreme Court has noted, however, that the *Rooker-Feldman* doctrine has "sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases," *Exxon Mobil Corp.*, 544 U.S. at 283, and that "*Rooker–Feldman* does not otherwise override or supplant preclusion doctrine," *id.* at 284. Thus, "[i]f a federal plaintiff presents some independent claim, *albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party*, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (quotations and brackets omitted)(emphasis added).

Here, Plaintiff contends that his injury was not caused by any state court ruling and that he does not seek to undo any aspect of a state court rulings, instead, he only seeks relief for the alleged unconstitutional interference with his parental rights prior to any judicial involvement. Plaintiff further states that he is willing to modify the relief sought in his Amended Complaint so as to not run afoul of the *Rooker-Feldman* doctrine. The Court agrees that Plaintiff's present claim, narrowly construed, does not seek to undo any state court ruling; although it does deny the

5

state court's legal conclusion that the initial removal was reasonable and necessary. Defendant, however, contends that even if Plaintiff's claim is so narrowly construed, his claim for damages based on the allegedly unconstitutional initial removal of his children without due process, if granted, would require this Court to conclude that the juvenile court decision upholding the removal was wrong. While this may be true, such review would implicate preclusion doctrine, not *Rooker-Feldman*.

In a recent case involving claims very similar to those presented here, the Tenth Circuit clarified the contours between issue preclusion and *Rooker-Feldman*. *See Silvan W. v. Briggs*, No. 07–4272, 2009 WL 159429 (10th Cir. Jan. 23, 2009). In an unpublished opinion in *Silvan*, the Tenth Circuit considered whether DCFS officials' removal of a child from her home without a predeprivation notice and hearing violated the Fourteenth Amendment's Due Process Clause based on the absence of emergency circumstances posing an immediate threat to the child's safety. *Id*. at *3. The Tenth Circuit noted that because the focus of the lawsuit was on the defendants' actions taken before any judicial involvement, preclusion doctrine--not *Rooker-Feldman*--was implicated. The *Silvan* court stated, "'[b]ecause the injury that the plaintiffs here complain of was caused not by the state court's temporary custody order, but by the [prior] taking of [the minor child] by the DCFS agents and local [police] officers, this suit implicates the preclusion doctrine, not *Rooker- Feldman*.'" *Id*. (quoting *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002).

Similarly, because the Court construes Plaintiff's claim as limited to the legality of Lowe's actions prior to any judicial involvement, *Rooker-Feldman* does not apply here and the

Court retains subject matter jurisdiction over Plaintiff's claim. However, Plaintiff's claim may still be barred by issue preclusion.

### IV. Issue Preclusion--Collateral Estoppel

Under 28 U.S.C. § 1738, commonly known as the full faith and credit statute, federal courts are required to give the same preclusive effect to a state court judgment that the judgment would receive in the courts of the issuing state. *See* 28 U.S.C.A. § 1738 (West 2011). "The United States Supreme Court has determined that § 1738 and traditional rules of preclusion are applicable to § 1983 actions." *Jarrett v. Gramling*, 841 F.2d 354, 356 (10th Cir. 1988). Issue preclusion, also known as collateral estoppel, "prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." *Snyder v. Murray City Corp.*, 73 P.3d 325, 332 (Utah 2003). Thus, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980).

Under Utah law, issue preclusion applies only when the following four elements are satisfied:

> (i) the party against whom issue preclusion is asserted [was] a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication [was] identical to the one presented in the instant action; (iii) the issue in the first action [was] completely, fully, and fairly litigated; and (iv) the first suit . . . resulted in a final judgment on the merits.

*Snyder*, 73 P.3d at 332. Moreover, "issue preclusion 'prevents the relitigation of issues that have

7

been once litigated and determined in another action *even though the claims for relief in the two actions may be different*.'" *Oman v. Davis School District*, 194 P.3d 956, 966 (Utah 2008) (emphasis in original).

There is no dispute that the first and fourth elements of issue preclusion are satisfied here. The records submitted by Defendant clearly show that Plaintiff was a party to the juvenile court proceedings which reviewed the legality of the removal on April 1, 2005. According to the transcript of the Shelter Hearing held on April 5, 2005, Plaintiff was present and represented by counsel at that hearing. (Doc. no. 70, Supp. Mem. Supp. Mot. Dismiss, Ex. 2.) Court records also show that final judgment on the legality of the April 1, 2005, removal was rendered following that hearing. On April 13, 2005, the juvenile court issued a Shelter Order which included a finding of fact that "the removal was reasonable based upon the stipulation of the parties and the father's arrest." (Supp. Mem., Ex. 4 at 3.) The Shelter Order also made a conclusion of law that "the removal of the children was appropriate and necessary based upon the stipulation of the parties and the father's arrest." (Supp. Mem., Ex. 4 at 4.) Thus, the critical question here is whether the second and third elements of issue preclusion are satisfied.

To satisfy the second element of issue preclusion Defendant must show that the issue presented here is identical to one decided in the prior adjudication. Defendant asserts that this element is satisfied because the juvenile court specifically determined that the removal was "reasonable and necessary" under Utah law. Plaintiff, on the other hand, asserts that the issues are not identical because the juvenile court did not specifically address whether removing the children without a pre-deprivation hearing satisfied due process under the U.S. Constitution.

8

In *Jensen v. Foley* 295 F.3d 745, 747-49 (7th Cir. 2002), the Seventh Circuit addressed essentially the same argument raised by Plaintiff. In *Jensen*, the parents of infant Kayla Jensen sued the Illinois Department of Children and Family Services, along with local law enforcement officers, after the defendants removed Kayla from her parents' custody without a pre-deprivation hearing. The district court dismissed the Jensens' claims, concluding that they were barred by the *Rooker-Feldman* doctrine. On appeal, the Seventh Circuit held that the *Rooker-Feldman* doctrine did not apply but concluded that their claims were barred by collateral estoppel because the Illinois state court specifically addressed whether probable cause to remove Kayla existed under Illinois law. As the *Jensen* court explained:

> Although the state court determined that Kayla's temporary protective custody complied with Illinois law, and the plaintiffs now complain that the officers who removed Kayla violated the U.S. Constitution, the issue of probable cause at the time of the taking is controlling in both cases. The constitutional claims that plaintiffs brought to federal district court could succeed only if no probable cause existed. Because the state court held otherwise, we are barred by the doctrine of issue preclusion from reconsidering the issue.

*Jensen*, 295 F.3d at 748 (internal citation omitted).

The Seventh Circuit's reasoning in *Jensen* is highly persuasive. Although the juvenile court here did not specifically address whether the removal of Plaintiff's children complied with due process under the U.S. Constitution, as in *Jensen*, Plaintiff cannot obtain relief on his present claim without disturbing the juvenile court's determination that the removal was reasonable and necessary. Moreover, Plaintiff does not contend, nor could he, that the removal violated due process under the U.S. Constitution despite being reasonable and necessary under Utah law.

9

Thus, the Court finds that the second element of issue preclusion is satisfied.

Finally, the Court turns to the third prong of the collateral estoppel analysis: whether the reasonableness of the removal on April 1, 2005, was completely, fully, and fairly litigated in the state courts. Plaintiff contends that this element is not satisfied because much of the evidence relevant to his claim was not available until the OCPO investigation was concluded on July 16, 2007, one year after the final termination of Plaintiff's parental rights. Regarding the removal of Plaintiff's children by Defendant Lowe, fka Ms. Oyler, the OCPO report makes the following conclusions:

> According to SAFE, Ms. Oyler terminated employment with DCFS on January 6, 2006; therefore, OCPO is unable to conduct an interview with her regarding this concern.
>
> OCPO is unable to determine the reason Ms. Oyler was at the scene [where] Mr. Weaver was being arrested. There is no documentation that law enforcement contacted CPS Intake. It appears that Ms. Oyler was at the scene and then initiated DCFS involvement, rather than CPS Intake requesting that Ms. Oyler respond to the scene in the capacity of an on-call worker.
>
> There is no documentation regarding the basis of Ms. Oyler's determination that Mrs. Vandersteen was not an appropriate care giver for [Plaintiff's children]. According to the documentation, law enforcement allowed Mr. Weaver to make arrangements for Mrs. Vandersteen to care for his children during his incarceration, and law enforcement did not document the need for placement in protective custody.
>
> It is the opinion of the OCPO that Ms. Oyler could have minimized the trauma to [Plaintiff's children] by allowing them to remain in Mrs. Vandersteen's care, a person with whom they had a relationship. When Ms. Oyler arrived at the scene, she was not obligated to remove the children, as there was no indication they would be at risk in Mrs. Vandersteen's care. OCPO notes, however, that a Juvenile

>            Court Judge reviewed the circumstances surrounding the removal and
>            found the removal to be warranted and ordered that the children
>            remain in DCFS custody.

(OCPO Report at 14.)

Although the OCPO report notes irregularities with regard to Lowe's involvement and questions her decision to remove Plaintiff's children--even going so far as concluding that leaving the children with Mrs. Vandersteen would have been a better option than removal--the report does not include any specific information that directly undermines the juvenile court's findings and conclusions. While the information in the OCPO report undoubtedly would have been helpful to the juvenile court in reviewing the reasonableness of the removal, the lack of such information did not prevent the juvenile court from making a well-reasoned decision.[5] Moreover, such detailed information–collected only after months of investigation–would have been impossible to gather in time for the shelter hearing, which was necessarily held as soon as possible following removal. The mere fact that the Shelter Hearing was conducted without the aid of the OCPO's detailed findings does not show that Plaintiff was denied the right to completely, fully, and fairly litigate the validity of the removal.

---

[5] According to the Shelter Hearing transcript and the Shelter Order the basis for the juvenile court's finding that the removal was reasonable and necessary was Plaintiff's arrest and stipulation. Review of the hearing transcript, however, supports Plaintiff's contention that he did not stipulate to the reasonableness of the removal on April 1, 2005. In fact, a fair reading of the transcript shows that Plaintiff's counsel was confused about the circumstances surrounding the removal on April 1, 2005, and stipulated only to the reasonableness of a prior removal. Nevertheless, the juvenile court also took into consideration the circumstances surrounding Plaintiff's arrest which raised the possibility that Plaintiff would not be released from jail in time to promptly retake custody of his children. Those circumstances alone provided sufficient basis to support the juvenile court's decision even without Plaintiff's stipulation.

More importantly, the juvenile court records show that Plaintiff did not raise any concerns regarding Lowe's involvement at the Shelter Hearing, despite having ample opportunity to do so. Although Plaintiff raised numerous issues concerning the circumstances of his arrest and the nature of the charges against him, Plaintiff never asserted during the shelter hearing that Lowe's involvement was improper or that his civil rights were violated. Plaintiff could have easily conveyed through counsel that he believed Lowe acted improperly by showing up at the scene and taking the children, but he did not. Having failed to do so, Plaintiff cannot relitigate the issue here. Thus, the Court concludes that Plaintiff cannot show that he was denied the opportunity to completely, fully, and fairly litigate his present claims in the juvenile court.

Having determined that each element required for issue preclusion is satisfied here, the Court concludes that Defendant is entitled to dismissal of Plaintiff's remaining claims based on collateral estoppel.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant Lowe's Motion to Dismiss (Dkt. no. 58) is **GRANTED** and this case is **CLOSED**.

DATED this 7th day of September, 2011.

BY THE COURT:

_____
TED STEWART, Chief Judge
United States District Court